IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DIANE RANDLE,**

        Plaintiff,

    v.

**TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON, an Oregon municipal corporation,**

        Defendant.

No. 3:15-cv-00271-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Diane Randle has brought this employment action against her employer Tri-County Metropolitan Transportation District of Oregon ("TriMet"). TriMet filed a motion for summary judgment [28] and a memorandum in support [29] seeking to dismiss all of Randle's claims. I find that Randle has not gone beyond her pleadings in offering any evidence in support of her claims and that there is no genuine dispute as to any material fact in this case. I therefore GRANT Defendant TriMet's motion for summary judgment [28] and DISMISS all of Randle's claims.

    **I.    FACTS**

    Diane Randle is a bus operator for TriMet. As a bus operator, Randle is a member of the Amalgamated Transit Union Division 757 ("ATU"), which is the union representing TriMet bus drivers. TriMet and ATU operate under a collective bargaining agreement called the Working and Wage Agreement ("WWA"). Three different TriMet policies and procedures are relevant to this case: first,

1 – OPINION AND ORDER

how buses and routes are assigned; second, when and where TriMet operators may use restrooms; and third, how TriMet operators' time loss and leave are managed.

First, under the WWA, bus operators sign up or bid for work assignments during sign-up periods that occur quarterly. Work assignments are awarded on a seniority basis. Certain types of buses are assigned to certain runs and during the sign-up period, a list is posted indicating which type of bus is assigned to each run. A low-floor bus is often desirable because it has air conditioning and air-adjustable seats.

Second, TriMet and the ATU have established an extensive restroom protocol for TriMet operators. TriMet writes schedules that incorporate time for restroom breaks for its operators. In accordance with the WWA, TriMet provides one or more restroom facilities on each of its routes, often at either end of the route. In addition to these TriMet controlled and operated restroom facilities, TriMet has also entered into agreements with other entities, such as convenience stores, gas stations, or other local businesses to allow TriMet operators to use their restrooms. Furthermore, at any point in a route, if bus operators need to use the restroom, they are allowed to stop at any place they can safely park the bus (including any bus stop) and use whatever facilities are available.

Third, TriMet contracts with Reed Group, a third-party administrator, who handles all leave-related paperwork, analyzes whether an absence is qualified under the Family Medical Leave Act or Oregon Family Leave Act, and monitors compliance with federal and state law. It is the responsibility of a TriMet employee to coordinate all leave requests through Reed Group.

On January 3, 2013, Randle started receiving treatment for abdominal issues that resulted in her being away from work for several months. On February 26, 2013, Randle contacted Reed Group to initiate a leave request under the FMLA and the OFLA and requested her leave be backdated to January 3, 2013. Reed Group informed Randle she had thirty days to submit the requisite forms and

certifications, which she did not do. On March 27, 2013, Reed Group informed Randle that her leave request was denied for lack of proper certification. Randle contacted Reed Group on April 4, 2013, to inquire about the denied request and was told that even though she was outside the thirty-day period, she could still submit the necessary paperwork as long as she included a letter of extenuating circumstances. On May 28, 2013, Randle finally submitted all the necessary paperwork and Reed Group approved her leave for the requested period of January 3, 2013 through May 14, 2013, with the only leave not approved being due to the exhaustion of time under FMLA.

On May 16, 2013, Randle returned to work and presented her manager, Robert Romo, with a doctor's note indicating Randle was released to return back to work with the following restrictions: 1) she was to work no more than six hours of continuous work from May 16th to May 24th; and 2) she needed an air adjustable seat and air conditioning in the bus that she drives. Because Randle returned to work in the middle of a sign-up period, she had already been assigned a route based on her most recent bid request. That shift happened to have a low floor bus assigned to it, thus meeting the second accommodation. TriMet also adapted the shift so Randle would not have to drive more than six hours.

Sometime in May or June, Randle met again with Mr. Romo and presented him with a new medical report of work ability indicating she could now work ten consecutive hours, but would still need air conditioning and an air adjustable seat. In addition to the printed medical report, Randle also said the doctor had noted that her "medication schedule requires adequate time prior to driving again and any shifts she be assigned to have adequate restroom breaks." (Randle Decl. at ¶ 9.) Mr. Romo reviewed the available runs and determined the only one that both met those limitations and fell within Randle's seniority level was on a Line 20 night shift running from 5:50 p.m. until 2:10 a.m. on weekdays. Mr. Romo offered Randle that shift but Randle declined it "for restroom reasons and safety reasons." (Randle Depo. 67:19.) Randle indicated that she would need to use the restroom more often than Line 20

would allow. Despite the fact that Line 20 remained available throughout the summer sign-up period, Randle never agreed to that shift. Instead, Randle drove another route until she was able to bid for the fall sign-up, when she was been able to bid for a shift that more fully met her physical limitations and restrictions.

Randle filed this action alleging various theories of employment liability under the Americans with Disabilities Act, Rehabilitation Act, Family Medical Leave Act, and Oregon Family Leave Act. She has subsequently filed an amended complaint [8]. TriMet filed this motion for summary judgment [28] seeking dismissal of all Randle's claims.

## II.   LEGAL STANDARD

The court shall grant summary judgment if the movant shows that the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The movant has the burden of showing that there is no genuine issue of fact.'" *Anderson*, 477 U.S. at 256. The moving party may carry its initial burden on summary judgment by showing that the opposing party lacks sufficient evidence to carry its ultimate burden of persuasion at trial. FED. R. CIV. P 56(c)(1)(B); *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). If the movant initially demonstrates that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings, but rather has the "burden of [pointing] to 'specific facts showing that there is a genuine issue for trial. . . .' [I]t is not the district court's job to sift through the record to find admissible evidence in support of a non-moving

party's case." *Claar v. Burlington N. R.R.Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (quoting *Celotex Corp.*, 477 U.S. at 324).

### III.  DISCUSSION

As a threshold matter, I note that in response to TriMet's motion for summary judgment, Randle does little more than restate her amended complaint. The "Statement of Facts" section of Randle's response consists of almost the exact language as paragraphs 7 through 17 of Randle's amended complaint, with the only exceptions being that she has fixed some of the spelling and grammatical errors and removed the numbering. Randle's declaration is a nearly verbatim recitation of her response's statement of facts section, except it is in the first, rather than third, person. This declaration is insufficient to support her opposition to the motion for summary judgment. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809 (9th Cir. 1988) (declarations which merely restate the pleadings are insufficient to survive a motion for summary judgment because Federal Rule 56(e) does not allow a party to oppose summary judgment on the pleadings themselves). Randle does not cite to a single piece of evidence in the record other than her own declaration, and it is not the court's job to "sift through the record to find admissible evidence in support of a [her] case." *Claar*, 29 F.3d at 504. As I review whether summary judgment is appropriate on each of Randle's four claims, I must "determine whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Brown v. City of Los Angeles*, 521 F.3d 1238, 1240 (9th Cir. 2009). For the following reasons, I find that there is no genuine dispute as to any material fact and grant TriMet's motion for summary judgment in its entirety.

#### A.  Americans with Disabilities Act Claim

Randle brings a claim under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq. In order to establish a *prima facie* case of employment discrimination under the ADA, a plaintiff

5 – OPINION AND ORDER

must show that she: (1) has a disability; (2) is a qualified individual under the act; and (3) suffered an adverse employment action because of the disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007).[1] TriMet does not contest that Randle had a disability and was a qualified individual under the ADA. Rather, it argues that Randle's ADA discrimination claim fails because she did not suffer an adverse employment action.

Randle appears to advance her ADA claim under two theories: discrimination and retaliation. The failure to provide a reasonable accommodation to a qualified individual with a disability can constitute discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A); *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1232 (9th Cir. 2003). Once an employee requests an accommodation, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (quotation and citation omitted).

Randle alleges in her amended complaint that TriMet failed to participate in the interactive process to find a reasonable accommodation that fit her needs. Engaging in the interactive process is not an independent cause of action under the ADA, rather it is part of an employer's duty to accommodate. *See Dean v. Safeway, Inc.*, 2014 WL 6473543, *16–17 (D. Or. Nov. 18, 2014); *see also Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292 (7th Cir. 2015). This interactive process requires: "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that

---

[1] The Ninth Circuit analyzes ADA cases using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Snead v. Metro Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). This approach first requires the plaintiff to establish a *prima facie* case and then shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp.*, 411 U.S. at 802. The burden then shifts back to the plaintiff to show the defendant's explanation was merely pretext for a discriminatory motive. *Id.* at 804.

is reasonable and effective." *UPS Supply*, 620 F.3d at 1110; *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

Absent her conclusory declaration on the matter, Randle has failed to provide the court with any evidence that TriMet refused to engage in the interactive process. Indeed, the evidence in the record suggests there was direct communication between Randle and TriMet, TriMet considered Randle's request, and TriMet offered Randle an accommodation that was reasonable and effective when it offered her Line 20. Randle asked TriMet to provide a bus route that had the following accommodations: (1) a maximum of 8–10 consecutive working hours; (2) at least 8 hours' time before driving where she could take her medication; (3) air adjustable seats in her assigned vehicle; (4) air conditioning in her assigned vehicle; and (5) "adequate" restroom breaks. (Am. Compl. [8] at ¶ 11.) TriMet provides evidence that each and every one of these accommodation requests was met by assigning Randle the night shift on Line 20. Randle does not cite to any evidence to the contrary.

When Randle was asked at her deposition whether Line 20 was ten hours or less, she answered that it was. (Randle Depo. 67:25–68:1.) When asked whether Line 20 was equipped with vehicles that had air adjustable seats and were air conditioned, she said it was. (*Id.* at 68:4–6.) Randle appears to suggest that Line 20 was unreasonable because it did not afford her adequate restroom breaks. In her deposition, Randle defined adequate restroom breaks to mean every hour to 90 minutes. (*Id*. at 179:15–22.) TriMet cites to evidence in the record that Line 20 frequently provided restroom breaks, with the longest time between established restroom facilities being 70 minutes. (Romo Decl. at ¶ 26, Ex. 19.) In addition, TriMet offers into evidence its policy that any driver may at any time use any restroom facility available to the public as long as the driver can safely park the bus. (*Id.* at ¶ 17.) TriMet even offers into evidence the location of an establishment that is open 24-hours a day along Line 20 that Randle could

7 – OPINION AND ORDER

use late at night. (*Id.*) The record, even in the light most favorable to Randle, does not support a genuine issue of material fact that Line 20 did not provide provided Randle with adequate restroom breaks.

Randle also suggests that Line 20 was an unreasonable accommodation because it was in the middle of the night and interfered with her "medication schedule, which was based on working days and taking medications after work and at night." (Randle Decl. at ¶ 12.) In her amended compliant, Randle alleges that she told TriMet that the doctor noted "her medications are on a regular schedule requiring no driving within 8 hours of taking pain medications, currently taking pain meds after work & at night." (Pl. Am. Compl. [8] at ¶ 11.) However, there is no evidence Line 20 would interfere with Randle's ability to keep medicating on a regular schedule and refrain from driving for eight hours after taking pills, thus complying wholly with her medical restrictions. That she was taking medications at night does not mean that she could not start taking them during the day, so long as she adhered to the eight-hour window and nothing from her doctor in the record is to the contrary.

In response to Randle's argument that there were other, more accommodating bus routes available that TriMet elected not to assign to her, TriMet provides evidence that these other routes were not within Randle's ATU seniority level. As such, TriMet was not obligated to award any of them to her. *Willis v. Pacific Maritime Ass'n*, 236 F.3d 1160, 1165 (9th Cir. 2001) ("A plain reading of the ADA supports the conclusion that an accommodation that would compel an employer to violate a [collective bargaining agreement] is unreasonable."). TriMet submits evidence that the only route that Randle qualified for that met her accommodations was Line 20. Randle does not submit any evidence to the contrary.

The only evidence Randle relies on in opposition to dismissing her ADA claim is a vague, conclusory statement in her declaration that she has "suffered adverse employment actions and was not provided a reasonable accommodation. In addition, I was discriminated against and harassed based on

my disability; and Tri Met retaliated against me for requesting a reasonable accommodation." (Randle Decl. at ¶ 20.) Randle makes no effort to address or rebut TriMet's showing that Line 20 was a reasonable accommodation. Her response consists only of conclusory allegations without any specific references to the record. TriMet "is not obligated to provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110-11 (9th Cir. 2010) (quotation and citation omitted). Accordingly, I dismiss Randle's ADA discrimination claim.

Randle also alleges that TriMet retaliated against her for making an accommodation request. A discrimination claim and a retaliation claim are distinct and separate under the ADA. The Ninth Circuit has stated "a retaliation claim does not necessarily depend on the plaintiff's proof of a disability. Instead, a *prima facie* case of retaliation requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (internal quotes and citations omitted). The only reference to retaliation in the record is Randle's own declaration that TriMet "has constantly harassed and retaliated against me for filing the complaint with BOLI." (Randle Decl. at ¶ 19.) Besides that short, conclusory statement, Randle does not cite any specific TriMet action that she alleges was due to discrimination based on disability nor does she provide evidence of how she was adversely affected by any adverse action. Accordingly, I also dismiss Randle's ADA retaliation claim.

### B. Rehabilitation Act Claim

Randle also brings a claim under section 504 of the Rehabilitation Act, 29 U.S.C. § 794. I dismiss Randle's Rehabilitation Act claim for the same reasons I dismiss her ADA claim. Claims under the Rehabilitation Act and ADA are analyzed in the same way. *Boose v. Tri-County Metropolitan Transp. District of Oregon*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) ("Because the ADA was modeled on section 504 of the Rehabilitation Act, courts have applied the same analysis to claims brought under

both statutes.") (internal quotation and citation omitted); *see also Sosa v. New York Division of Human Rights*, 2015 WL 5191205, at *5 (E.D.N.Y Sept. 4, 2015) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same.") (internal quotation and citations omitted). Because I have granted summary judgment on Randle's ADA claim, TriMet is also entitled to summary judgment on Randle's Rehabilitation Act claim.

### C. Family Medical Leave Act Claim

Randle brings her third claim for relief under the Family Medical Leave Act, 29 U.S.C. §2601 et. seq. To sustain an FMLA interference claim, an employee must show by a preponderance of the evidence that: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)); *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) ("The employee must establish these elements by a preponderance of the evidence."). The only element that TriMet disputes is whether TriMet denied Randle benefits to which she was entitled.

In her Response, Randle claims that she produced evidence that TriMet interfered with her "right to avail herself of rights to which she was entitled under FMLA." (Pl. Resp. at 6.) In support of this statement, Randle cites to paragraph 22 of her declaration. Problematically, her declaration only has twenty-one paragraphs. On the other hand, TriMet offers evidence that Randle's FMLA claim was only denied because she had not submitted the necessary paperwork to Reed Group. Once she submitted the necessary documentation, Reed Group granted Randle's leave request. In her amended complaint, Randle bases her FMLA claim on a document she received that notified her that she had 849.23 hours of time lost. TriMet submits a series of declarations that clarify that the 849.23 hours Randle refers to in

10 – OPINION AND ORDER

her complaint were, in fact, credited to her after she submitted the proper paperwork. (Heitmeyer Decl. at ¶¶ 7-8.) TriMet offers evidence that all of Randle's time requests were approved unless her time was exhausted. (*Id.* at ¶ 10.)

While it is not entirely clear what her exact argument is, it appears that Randle advances a theory that although she was ultimately credited her time, TriMet still violated the FMLA by interfering with her request. TriMet has produced evidence that Randle's request was delayed only because she did not comply with the proper policies and procedures to request leave through Reed Group, not because of any interference from TriMet. If I were to accept Randle's theory, then any administrator requiring an employee to comply with policies and procedures to request leave under the FMLA could be considered to have interfered with the request in violation of the FMLA. There is no evidence in the record that Reed Group's documentation policies were unreasonable. To the contrary, TriMet produced evidence that Randle's request was ultimately granted because it allowed Randle to submit the necessary documentation outside of the customary thirty-day window. I therefore dismiss Randle's FMLA claim.

### D.  Oregon Family Leave Act

Randle brings her final claim for relief under the Oregon Family Leave Act, ORS § 659A.150 et. seq. TriMet indicates in its motion for summary judgement that counsel for TriMet and Randle conferred and agreed that Randle would withdraw her OFLA Entitlement Claim. (Mot. Sum. J. at 2) However, nowhere in her response does Randle confirm that she has withdrawn her OFLA claim. Because Randle does not address her OFLA claim in her Response, she has abandoned the claim. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'") (quoting *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). I therefore dismiss Randle's OFLA claim.

### IV.    CONCLUSION

Because there is no genuine dispute as to any material fact, I find that Defendant TriMet is entitled to judgment as a matter of law, and I GRANT TriMet's motion for summary judgment [28] and DISMISS all of Randle's claims.

DATED this   17th   day of March, 2016.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge
